**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

_____

IN RE:

BARBARA DRAKE,                                                        Chapter 7
                DEBTOR.                                               Case No. 03-18150-WCH
_____

BARBARA DRAKE,
                PLAINTIFF,                                            Adversary Proceeding
                                                                     No. 08-1204
v.

MASSACHUSETTS DEPARTMENT OF REVENUE,
NAVJEET BAL, COMMISSIONER,
                DEFENDANTS.
_____


**MEMORANDUM OF DECISION**


## I.  <u>INTRODUCTION</u>

The matters before the Court are the Defendant's, Massachusetts Department of
Revenue (the "MDOR"), Motion for Summary Judgment ("MDOR's Motion for
Summary Judgment"), the Plaintiff's, Barbara Drake ("Drake"), opposition thereto,
Drake's Motion for Summary Judgment ("Drake's Motion for Summary Judgment"), and
the MDOR's opposition.  Generally, the parties seek to determine whether the MDOR
maintains a valid tax lien against Drake that attached to Drake's right to her retirement
pension prior to her filing her bankruptcy petition, and whether the MDOR violated the
discharge injunction.  For the reasons set forth below, I will enter judgment granting in
part and denying in part both of the motions for summary judgment.

## II. <u>BACKGROUND</u>

Drake was born on May 30, 1939.[1]  For more than thirty years she has been

employed as a public elementary school teacher in Massachusetts and has been a member

of the Massachusetts teachers' contributory retirement system.[2]  At all times relevant

hereto, Drake has been married to and resided with Gregory Drake ("Gregory,"

collectively, with Drake, the "Drakes").[3]

The Drakes filed late joint income tax returns for the years 1993 through 1996

(the "1993-1996 Taxes").[4]  The assessment date (the date the late return was filed) and

assessment amount are summarized in the matrix below:[5]

| Period | Assessment Date | Assessment Amount |
|--------|-----------------|-------------------|
| 1993 | 3/27/1995 | $2,200.00 |
| 1994 | 2/26/1998 | $550.00 |
| 1995 | 9/25/1997 | $47,082.00 |
| 1996 | 9/26/1997 | $2,598.00 |

Pursuant to Massachusetts law, the tax liens (the "Tax Liens") arose at the time of the

assessment for the delinquent taxes.[6]  The Tax Liens attached to all property or rights to

property the Drakes held either jointly or separately.[7]

---

[1] MDOR's Motion for Summary Judgment, Exhibit A - Statement of Material Facts Not in Dispute ("SMF") ¶ 1, Docket No. 62, Adversary Proceeding No. 08-01204 (the "Adversary Proceeding").  All references to docket numbers hereinafter refer to the Adversary Proceeding, unless otherwise stated.

[2] *Id.* at ¶ 2.

[3] *Id.* at ¶ 4.

[4] *Id.* at ¶¶ 5-6 & 8-9.

[5] *Id*. at ¶ 11.

[6] Mass. Gen. Laws ch. 62C, § 50(a).

[7] SMF at ¶ 11.

On August 19, 1997, before the Drakes filed the late tax returns for 1995-1996, they filed a joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts (the "Joint Case").[8]  Almost two years later, on July 20, 1999, the Joint Case was dismissed without a Chapter 13 plan having been confirmed.[9]

On May 9, 2000, the MDOR filed a Notice of Massachusetts Tax Lien for the delinquent 1993-1996 Taxes (the "Notice") in the Barnstable County Registry of Deeds and in the Office of the Secretary of State.[10]   Approximately one month after the Notice was filed, on June 3, 2000, the Drakes entered into a payment agreement with the MDOR for the 1993-1996 Taxes that required that they make monthly payments in the amount of $600 to the MDOR and that they continue to file their tax returns (the "Payment Agreement").[11]

Later that same year, Gregory entered into a payment agreement with the MDOR for certain trust fund taxes incurred by one of his businesses for which he had been held personally liable (the "Business Payment Agreement").[12]   The Business Payment Agreement required that Gregory make monthly payments of $150 to the MDOR and continue to file appropriate tax returns.[13]

---

[8] *Id.* at ¶ 7.

[9] *Id.* at ¶ 10.

[10] *Id.* at ¶ 11.

[11] *Id.* at ¶ 12.

[12] *Id.* at ¶ 13.

[13] *Id.*

On September 30, 2003 (the "Petition Date"), Drake, this time on her own, filed a voluntary Chapter 13 petition (the "Bankruptcy Case").[14]  On her Schedule B-Personal Property, Drake listed her right to a pension from the Massachusetts Teachers' Contributory Retirement system (the "Pension"), which had vested by the Petition Date though she had not retired yet.[15]  The next month, the MDOR filed a secured proof of claim for unpaid taxes as follows:[16]

| Period | Assessment Date | Tax | Interest | Penalty |
|--------|-----------------|-----|----------|---------|
| 1993 | 3/27/1995 | $0.00 | $46.26 | $22.72 |
| 1994 | 2/2/1996 | $0.00 | $507.85 | $118.92 |
| 1995 | 9/25/1997 | $25,241.00 | $50,767.19 | $19,307.35 |
| 1996 | 9/26/1997 | $0.00 | $218.80 | $75.45 |

On September 2, 2004, upon Drake's motion, the Bankruptcy Case was converted to one under Chapter 7.[17]  That December, Drake was granted a discharge (the "Discharge")[18] under section 707 of the Bankruptcy Code (the "Code").[19]

On January 3, 2006, Drake's attorney sent a letter to an attorney at the MDOR allegedly confirming a conversation that they had in which the MDOR's attorney stated that "the liens which had been filed against Mrs. Drake have expired as a matter of law and that the [MDOR] can no longer collect from Mrs. Drake for [the 1993-1996 Taxes]"

---

[14] *Id.* at ¶ 14.

[15] *Id.* at ¶ 17.

[16] SMF at ¶ 18. Drake disputes that the MDOR's claim is "secured" but does not dispute the amount of the claim.

[17] *Id.* at ¶ 19.

[18] *Id.* at ¶ 20.

[19] 11 U.S.C. § 101 *et seq.*

(the "Lien Expiration Letter").[20]  There is no response to this letter in the record nor is there any other evidence substantiating the claim made therein.

By 2008, the only outstanding liability was for the 1995 and 1996 taxes (the "1995-1996 Taxes").[21]  Gregory continued to make payments on the Payment Agreement through February of 2008.[22]  Two months later, after Gregory had stopped making payments on the Payment Agreement, the MDOR sent Gregory a "Notice of Intent to Terminate Payment Agreement" for failure to comply with the terms of the Payment Agreement.[23]  In April of 2008, Gregory's counsel, Timothy Burke ("Burke") applied for hardship relief (the "Hardship Application") for the remaining balances of the 1995-1996 Taxes and his business trust fund taxes in light of a medical condition that purportedly left Gregory unable to continue to make payments pursuant to the Payment Agreement.[24] In response to the Hardship Application, the MDOR reviewed Gregory's application to determine what additional documents were needed to make a decision.[25]

On May 14, 2008, a tax representative from the MDOR, Anne Breton ("Breton"), and Burke discussed Gregory's Hardship Application.[26]  During the course of the conversation, they discussed the continued validity of the Tax Liens.[27]  Burke insisted

---

[20] Affidavit of Timothy Burke, Exhibit 3, Docket Number 68.

[21] Memorandum of Law in Support of the Defendants' Motion for Summary Judgment, Docket Number 71

[22] SMF at ¶ 21.

[23] Docket Number 63, Affidavit of Anne M. Breton (the "Breton Affidavit"), Exhibit B.

[24] SMF at ¶ 22.

[25]  Breton Affidavit at ¶¶ 19-20.

[26] *Id.* at ¶ 22.

[27] *Id.*

that the Tax Liens expired during Drake's bankruptcy and that she no longer had any liability for outstanding taxes.[28]   That same day, Breton called Burke and told him that the MDOR's position was that the Tax Liens had not expired, and that because some of the liabilities might be collectable from her, the MDOR needed certain information.[29] Burke reiterated that Drake received a discharge in bankruptcy, and in response, Breton instructed him to forward Drake's bankruptcy information to her along with Gregory's financials and hardship information.   Later that same day, Burke sent a copy of the Discharge to the MDOR but did not send any information related to the Hardship Application.[30]

On June 25, 2008, the MDOR, in a notice addressed solely to "Gregory Drake," denied the Hardship Application for lack of substantiation due to his failure to file missing income tax returns and other financial documents.[31]   The notice denying the Hardship Application contained the pre-printed statement "collection activity on your account will continue."[32]

After receiving the notice denying the Hardship Application, on July 3, 2008, Burke sent a letter to the MDOR advising Breton that any collection actions taken against Drake would be in violation of the Code.[33]   That same month, Breton had a telephone conversation with Burke, during which she indicated that the MDOR believed that the

---

[28] *Id.*

[29]  *Id.* at ¶ 23.

[30] *Id.* at ¶ 24.

[31] SMF at ¶ 23. *See also* Exhibit B to the Breton Affidavit.

[32] Barbara Drake's Statement of Material Facts Not in Dispute ("DSMF"), Docket Number 69, Exhibit 6.

[33] *Id.* at ¶ 26.

outstanding taxes remained collectable and that if he wanted to pursue Gregory's Hardship Application further, she would need "joint financials, joint bank accounts[,] . . . Gregory's missing returns, and proof of significant hardship."[34]

On August 6, 2008, shortly after the MDOR denied Gregory's Hardship Application, Drake instituted the current adversary proceeding (the "Adversary Proceeding").[35]  On September 18, 2008, Burke followed up with the MDOR regarding the denial of the Hardship Application.[36]  During the next few months the MDOR informed him that to complete the Hardship Application Gregory had to file: a statement of Drake's financial condition, copies of Drake's pay stubs, a copy of Drake's annuity savings account statement and a copy of Drake's bank account statement (the "Requests").[37]  Burke provided the MDOR with the requested documents soon thereafter.[38]  Over the course of several months, the MDOR followed-up the Requests with further questions and requests to clarify any deficiencies in the documents that Gregory had provided.[39]

---

[34] Breton Affidavit ¶ 28.  In her affidavit, Breton stated that "I told him I was being told that *it* was not discharged," but it is unclear precisely to what "it" was meant to refer.

[35] Docket Number 1.

[36] *Id.* at ¶ 32.

[37] *Id.* at ¶¶ 32-41.

[38] DSMF at ¶ 31.

[39] Breton Affidavit at ¶¶ 32-41.

On October 8, 2009, the MDOR re-filed the Notice in the appropriate offices so that it could extend its duration (the "Re-Filing").[40]  The tax years, the date of the assessment, and the initial date of filing the Tax Liens were filed as follows:[41]

| Tax Year | Date of Assessment | Date of Lien |
|----------|--------------------|--------------| 
| 1995 | 9/25/1997 | 5/9/2000 |
| 1996 | 9/26/1997 | 5/9/2000 |

On November 12, 2009, Drake deposed Breton (the "Breton Deposition").[42] Breton testified regarding the denial of the Hardship Application and the Re-Filing. During the course of the Breton Deposition, she testified that the MDOR "pursu[ed] the joint liability of Gregory and Barbara Drake" on account of the Tax Liens "[a]fter the [Payment Agreement] was broken" like Drake was "any other taxpayer."[43]

Subsequently, on December 15, 2009, the MDOR filed a motion for summary judgment in the Adversary Proceeding[44] in which they agreed that the Drakes' *in personam* liability on the 1995-1996 Taxes was "discharged," but that they still "hold[] a lien which was not discharged."[45]  Later, Drake amended the complaint (the "Complaint") such that, she sought a finding that the MDOR was attempting to collect on the Tax Liens in violation of the discharge injunction.[46]  The MDOR timely filed an

---

[40] SMF at ¶ 34.

[41] DSMF at ¶ 38.  Note that by this time the parties had agreed that the Drakes were no longer liable for the 1993 and 1994 taxes.

[42] Docket Number 68, Exhibit 1 (the "Breton Deposition").

[43] The Breton Deposition at pages 18-49.

[44] Docket Number 25.

[45] *Id.*, Exhibit 7 at 3.

[46] Docket Number 39.

answer (the "Answer").[47]  The Answer included counterclaims seeking findings that the

MDOR timely re-filed the Notice for the 1995-1996 Taxes and that the Tax Liens are still

effective.

Subsequently, the MDOR filed a motion for summary judgment asserting that it

did not violate Drake's discharge injunction (the "Discharge Injunction"), that the Tax

Liens were timely extended and remain in full force and that Drake's property acquired

both before and after both the filing of the Notice and the filing of her bankruptcy

petition are subject to the Tax Liens.[48]  Drake filed her opposition thereto and her own

cross-motion for summary judgment.[49]  The MDOR similarly opposed Drake's motion

for summary judgment.[50]

On April 16, 2010 I held a hearing on the motions for summary judgment.  At its

conclusion, I took both matters under advisement.

## MCMXCV.    POSITION OF THE PARTIES

### The MDOR

In seeking summary judgment and opposing Drake's Motion for Summary

Judgment, the MDOR argues that the Tax Liens are valid and were not discharged in

Drake's bankruptcy.  Furthermore, it argues that the Notice was properly filed prior to

the Petition Date, that the statute of limitations to re-file the Notice was stayed during the

pendency of the Bankruptcy Case, and that it was automatically extended by amendments

to Massachusetts law.  Next, the MDOR argues that the Tax Liens attached to property

---

[47] *See* Docket Number 61.

[48] Docket Numbers 62 and 71.

[49] Docket Numbers 67, 70, and 86.

[50] Docket Number 83.

that Drake had at the time that it filed the Notice as well as after-acquired property, including the Pension. Finally, the MDOR argues that because the Tax Liens remained valid post-discharge, it could not have violated the discharge injunction. Alternatively, even if it was no longer permitted to collect on account of the Tax Liens, the MDOR asserts its actions did not rise to the level of a violation of the discharge injunction.

*Drake*

In her motion for summary judgment and opposition to the MDOR's Motion for Summary Judgment, Drake asserts that the tax debt was discharged in bankruptcy. Furthermore, she argues that the Tax Liens expired before the Re-Filing because the MDOR failed to re-file the Notice within the proscribed time-period outlined in the statute, which she asserts was not tolled by the Bankruptcy Case. Additionally, Drake contends that and that the amendments that increased the statute of limitations for re-filing do not apply to the Tax Liens. Moreover, Drake asserts that even if the Tax Liens are valid, the Pension is exempt from attachment. Finally, Drake argues that the MDOR's attempt to collect on the Tax Liens, in conjunction with the Re-Filing, violated the discharge injunction.

## MCMXCVI.    DISCUSSION

A. *The Summary Judgment Standard*

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[51] The

---

[51] Fed. R. Civ. P. 56(c), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056.

burden of proof is on the moving party in the first instance.[52]  To defeat the motion, the

opposing party must produce substantial evidence of a genuine dispute as to a material

fact.[53]  A material fact is one that has the "potential to affect the outcome of the suit

under applicable law."[54]

In responding to a motion for summary judgment, the opposing party "may not

rely merely on allegations or denials in its own pleading; rather, its response must–by

affidavits or as otherwise provided in this rule–set out specific facts showing a genuine

issue for trial."[55]  Further, "if the opposing party does not so respond, summary judgment

should, *if appropriate*, be entered against that party."[56]  The United States Court of

Appeals for the First Circuit has explained this provision to mean that the absence of a

material factual dispute is a "condition necessary," but not a "condition sufficient" to

summary judgment.[57]  The moving party, therefore, must show that it is entitled to

judgment as a matter of law.[58]

B.  *The Tax Liens*

In Massachusetts, if a person fails to pay income tax, a lien arises at the time of

the assessment of the tax in favor of the Commonwealth "upon all property and rights to

---

[52] *Steel Hector & Davis v. Wang Labs., Inc.* (*In re Wang Labs., Inc.*), 155 B.R. 289, 290 (Bankr. D. Mass. 1993).

[53] *Desmond v. Varrasso* (*In re Varrasso*), 37 F.3d 760, 763 n. 1 (1st Cir. 1994).

[54] *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993).

[55] Fed. R. Civ. P. 56(e)(2).

[56] *Id.* (emphasis added).

[57] *In re Varrasso,* 37 F.3d at 764.

[58] *Id.*

property, whether real or personal, belonging to such person" for payment of the tax,
inclusive of interest and statutory additions, including penalties.[59]  Once a notice of the
tax lien is filed in the appropriate county registry of deeds and with the office of the
Secretary of State, the lien has priority against any mortgagee, pledge, purchaser or
judgment creditor who follows.[60]

The Drakes failed to file timely their joint income tax returns for their 1993-1996
income taxes.  Upon the filing of their returns, the MDOR assessed the Drakes as
follows:

| Period | Assessment Date | Assessment Amount |
|--------|-----------------|-------------------|
| 1993 | 3/27/1995 | $2.200.00 |
| 1994 | 2/26/1998 | $550.00 |
| 1995 | 9/25/1997 | $47,082.00 |
| 1996 | 9/26/1997 | $2,598.00 |

On these dates, the Tax Liens arose due to the Drakes' failure to pay timely the 1993-
1996 Taxes, secured by all property and rights to property, whether real or personal,
belonging to the Drakes.

C. *Effects of Drake's Discharge on the Tax Liens*

As I have previously noted, a secured claim is comprised of "two components: the
debtor's *in personam* liability on the obligation secured by the lien and the creditor's *in
rem* rights to proceed against the collateral."[61]  This distinction is relevant in bankruptcy
cases because a Chapter 7 "discharge extinguishes *only* 'the personal liability' of the
debtor" and a secured creditor's *in rem* right to pursue the collateral attached to the claim

---

[59] Mass. Gen. Laws ch. 62C, § 50(a).

[60] Mass. Gen. Laws ch. 62C, § 50(b).

[61] *Anderson v. Richards* (*In re Anderson*), No. 07-1328, 2009 WL 4840871, *7 (Bankr. D. Mass. December 10, 2009) (*citing Johnson v. Home State Bank*, 501 U.S. 78, 81 (1991)).

"survives or passes through bankruptcy."[62] "Indeed, the Supreme Court of the United States has expressly stated that '[o]rdinarily, liens and other secured interests survive bankruptcy.'"[63] Accordingly, even if Drake's *in personam* liability for the 1995-1996 Taxes was discharged, the MDOR's ability to enforce the Tax Liens *in rem* was unaffected by Drake's discharge.

D.  *Continuation of the Tax Liens*

i.  *Tolling of the Statute of Limitations*

Prior to January 1, 2005, a Massachusetts tax lien had a lifespan limited to six years from the date of the assessment of the tax.[64] If the lien holder failed to satisfy the lien within that six year period, the lien would lapse and become unenforceable unless the notice of lien was appropriately re-filed.[65] The law then, as it remains, provided that the running of the period of limitations on collections is suspended for the period during which, and for six months after, the MDOR is prohibited from collecting from the debtor by reason of the debtor (1) being a debtor in a bankruptcy proceeding; and (2) complying with a plan for payment of the tax promulgated in the bankruptcy proceeding.[66] Similarly, the Code provides for the tolling of statutes of limitations for claims against a debtor the pendency of the bankruptcy case.[67]

---

[62] *Id.* (*citing Johnson v. Home State Bank*, 501 U.S. at 82-83 (1991) (*quoting* 11 U.S.C. § 524(a)(1)) (emphasis in original)).

[63] *Id.* (*citing Farrey v. Sanderfoot*, 500 U.S. 291, 297 (1991)).

[64] *See* Mass. Gen. Laws ch. 62C, § 65 Historical Notes.

[65] *See* Mass. Gen. Laws ch. 62C, § 50 Historical Notes.

[66] Mass. Gen. Laws ch. 62C, § 65.

[67] *See* 11 U.S.C. § 108(c).

In 2004, with an effective date of January 1, 2005, Mass. Gen. Laws ch. 62C, § 50(a) was amended such that the duration of tax liens were extended to a period of ten years from the date of assessment and for subsequent ten year period(s) if a notice is re-filed.[68]  In enacting these statutory changes, the legislature also adopted a transition rule (the "Transition Rule") which provided that:

> The amendments to chapter 62C, section 50(a), and section 65 are effective as of January 1, 2005, and will be applicable to *any tax liability*…which remains due and unpaid as of January 1, 2005, or which is assessed on or after January 1, 2005.  Any notice of tax lien in favor of the Commonwealth recorded on a date making it less than 6 years old as of January 1, 2005 shall, if not sooner discharged as a result of payment of the tax, continue in full force and effect for a period of ten years from the date of assessment of the tax without the need for any notice or re-filing by the commissioner.  Thereafter, any further extension of the lien and any lien re-filing requirements shall be governed by section 50 of chapter 62C as amended by this act.[69]

Drake mistakenly contends that no taxes were due and unpaid on January 1, 2005 and that the Transition Rule does not apply to her.  Though Drake's *in personam* liability on the 1995-1996 Taxes was discharged in bankruptcy, the debt remained outstanding and the MDOR's *in rem* right to proceed against collateral attached by the Tax Liens survived discharge.  Furthermore, I note that Gregory's personal liability for the 1995-1996 Taxes was never discharged.  Hence, a tax liability remained due and unpaid as of January 1, 2005 and the Transition Rule applies.

Section 502(i) of the Code allows certain post-petition claims, such as the 1995-1996 Taxes, to be treated as if they had arise pre-petition.[70]  In the Joint Case the MDOR

---

[68] Mass. Gen. Laws ch. 62C, § 50(a).

[69] St. 2004, c. 262, § 70 (emphasis added).

[70] 11 U.S.C. § 502(i).

elected to treat the 1995-1996 taxes under § 502(i).  Drake argues that this prevents the

MDOR from asserting that it was prohibited from collecting on account of that debt

within the meaning of the tolling provision of Mass. Gen. Laws ch. 62C, § 65.  Even if

that were true, the statute of limitations remained tolled pursuant to the Code during the

pendency of the Joint Case.[71]

The Drakes filed the Joint Case on August 19, 1997.  They filed their 1995-1996

returns on September 26, 1997 and September 27, 1997, respectively.  At this juncture,

only the 1995-1996 Taxes are relevant because the parties stipulated that the others have

been paid.  The assessment dates for those years were September 25, 1997 and

September 26, 1997 respectively.  Without any tolling of the six year limitation period

(the "Limitation Period"), the Tax Liens would have expired on September 25, 2003 and

September 26, 2003 respectively.  Although the 1995-1996 Taxes were pre-petition tax

periods, the automatic stay prevented the MDOR from attempting to collect on account

of those taxes during the pendency of the Joint Case.  The automatic stay in the Joint

Case ceased upon the dismissal of that case on July 20, 1999.  Assuming, *arguendo*, that

only 11 U.S.C. § 108(c) applied to toll the Limitation Period and not the Massachusetts

statute, the clock on the statutory tax lien, which at the time was six years, was tolled for

the period between the filing of the tax returns and dismissal of the Joint Case, namely, to

July 20, 1999.[72]  Had no further events occurred to toll the Limitation Period, it would

have expired on July 20, 2005, six years from July 20, 1999.

---

[71] *See* 11 U.S.C. § 108(c).

[72] *See* 11 U.S.C. 108(c).

Nonetheless, the Limitation Period was further tolled, as to Drake, during the pendency of the Bankruptcy Case from September, 2003 to December 15, 2004, a period of a year and three months.  While the Bankruptcy Case tolled the Limitation Period, the Transition Rule automatically added four years to the validity of the Tax Liens because under no circumstances would they have expired prior to January 1, 2005.  Accordingly, the limitation period for the 1995-1996 Taxes was extended to at least January of 2009, without respect to tolling caused by the Bankruptcy Case.  With the tolling caused by the bankruptcy Case factored in, the Tax Liens would not have expired until October, 2010. Therefore, when the MDOR re-filed the notices of the Tax Liens on October 8, 2009, it did so before the expiration of the Notice resulting in the continued validity of the Tax Liens for another ten years.

     ii.     *MDOR's Statements that the Tax Liens had Expired and was Discharged*

Drake asserts that the statement Burke made to the MDOR in the Lien Expiration Letter that the Tax Liens "expired as a matter of law and that the [MDOR] can no longer collect from Mrs. Drake for those taxes at issue in her bankruptcy"[73] proves that the Tax Liens had expired.  Nonetheless, evidentiary hurdles and the special treatment that governmental entities receive in preventing the use of estoppel against them prohibit reliance on the Lien Expiration Letter as dispositive evidence that the Tax Liens ineffective.

A non-response to a letter is generally insufficient to show that the recipient adopted its contents.[74]  The proponent of the admission has the burden of proving that the

---

[73] *See* Lien Expiration Letter.

[74] 1-15 *Weinstein's Evidence Manual* § 15.02[3].

party's conduct manifested an intent to adopt the statement.[75]  The record does not reflect that the MDOR adopted the statements of the Lien Expiration Letter.

Additionally, it is a well-settled principle that "equitable estoppel will not lie against the Government as against private litigants."[76]  "When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined."[77] Massachusetts cases are consistent with this federal principle.[78]

Thus, because Drake has not shown that the MDOR adopted the statements in the Lien Expiration Letter and the doctrine of estoppel will not bind the MDOR to the statements contained therein, the Lien Expiration Letter does not prove that the Tax Liens expired as a matter of law.

E.  *Property Subject to Attachment by the Tax Liens*

i.  *After-Acquired Property*

As discussed, Drake's *in personam* liability for the 1995-1996 Taxes was extinguished by her discharge, but the MDOR's *in rem* right to proceed against the collateral attached by the Tax Liens survived the discharge.   Both Federal and Massachusetts tax liens attach to property and rights to property that a debtor owned at

---

[75] *Id* at [2].

[76] *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419 (1990).

[77] *Heckler v.Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60 (1984).

[78] *Morton Street LLC v. Sheriff of Suffolk County*, 453 Mass. 485, 491-492 (2009) ("We have been reluctant to apply principles of estoppel to public entities where to do so would negate requirements of law intended to protect the public interest.") (citation omitted).

the time the tax lien was filed and that she obtained after the tax lien was filed.[79]

However, as of yet, neither the Supreme Court of the United States nor the United States

Court of Appeals for the First Circuit have determined whether a tax lien survives to

attach to a debtor's property that she acquires post-petition.  Nonetheless, courts in other

jurisdictions have determined that post-petition property acquired by a Chapter 7 debtor

is not subject to a pre-petition tax lien.[80]

In *In re Sanabria*, the United States Court of Appeals for the Seventh Circuit

reasoned that allowing a pre-bankruptcy petition tax lien to attach to property acquired

post-petition would frustrate the purpose of the bankruptcy code[81] and that it logically

cannot be supposed that the Bankruptcy Code "intended to keep [pre-petition] debts alive

for the purpose of permitting the creation of an enforceable lien upon a subject not

existent when the bankruptcy became effective or even arising from, or connected with,

pre-existing property but brought into being solely as the fruit of the subsequent labor of

---

[79] *Luchini v. Commissioner of Revenue*, 436 Mass. 403, 406 (2002).  *See also Glass City Bank of Jeanette, Pa. v. United States*, 236 U.S. 265 (1945); *Plymouth Sav. Bank v. United States Internal Revenue Serv.*, 187 F.3d 203, 206 (1st Cir. 1999); *Markham v. Fay*, 74 F.3d 1347, 1363-1364 (1st Cir. 1996) ("federal tax lien attaches to property and rights to property that the taxpayer acquires at any time after assessment).

[80] *Dishong v. Dep't of Treasury (In re Dishong)*, 188 B.R. 51, 55 (M.D. Fla. 1995) (*citing United States v. Sanabria (In re Sanabria)*, 424 F.2d 1121, 1122 (7th Cir. 1970) (affirming district court ruling limiting federal tax lien to assets attached at date of petition); *In re Braund*, 423 F.2d 718, 718-719 (9th Cir. 1970) (per curiam), *cert. denied United States v. McGugin*, 400 U.S. 823 (1970) (holding the proper interpretation is not to extend prepetition tax liens to assets acquired postbankruptcy); *Wessel v. United States  (In re Wessel)*, 161 B.R. 155, 159 (Bankr. D.S.C. 1993) (holding tax liens attached to prepetition right to annuity payments, but "as the taxes were discharged in this action, it is true that these liens will not attach to property, or rights to property, the plaintiff acquires post-petition"); *Olson v. United States (In re Olson)*, 154 B.R. 276, 282 (Bankr. D.N.D. 1993) (differentiating liens on nondischargeable taxes from liens on dischargeable taxes because the latter "survive bankruptcy only as to the debtor's prepetition property"); *Leavell v. United States, et al (In re Leavell)*, 124 B.R. 535, 540 (Bankr. S.D. Ill. 1991)("Tax liens securing dischargeable debts, however, do not attach to the debtor's post-petition after-acquired property."); *Frengel v. Internal Revenue Service (In re Frengel)*, 115 B.R. 569, 572 (Bankr. N.D. Ohio 1989) ("Post-petition appreciations in the value of property, as well as after acquired property, inure to the benefit of a debtor under the fresh start principle.").

[81] *In re Sanabria*, 424 F.2d at 1123.

the bankrupt."[82]   This reasoning is uncontroverted.[83]   Although this case discusses

attachment of prepetition federal tax liens, there is no reason why an analogous principle

should not apply to prepetition state tax liens. Accordingly, I am persuaded that the rule

setout in *In re Sanabria* and adhered to by other courts around the country is the most

sensible, namely, that a tax lien based on dischargeable taxes can attach to property that

the debtor owned, or had rights to, at the time of the filing of the bankruptcy petition but

does not survive to attach the debtor's property that is acquired after filing the

bankruptcy petition.  Accordingly, I find that the Tax Liens could only attach to property

that Drake possessed or had rights to on the Petition Date.

      ii.   *Pension Benefits*

      Unless property is specifically exempt, a tax lien attaches to "all property and

rights to property, whether real or personal, belonging to such person" for payment of the

tax, inclusive of interest and statutory additions, including penalties.[84]   Certain types of

property and are exempt from a levy.[85]   Only property explicitly exempted in Mass. Gen.

Laws ch. 62C, § 55A is exempt from levy.[86]   Courts in Massachusetts have consistently

held that exemptions are "a matter of special favor or grace . . . . to be strictly

construed"[87] and to be "recognized only where the property falls clearly and

---

[82] *Id.* (citing *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934)).

[83] *In re Dishong*, 188 B.R. at 55.

[84] Mass. Gen. Laws ch. 62C, § 50(a).

[85]  *See* Mass. Gen. Laws ch. 62C, § 55A.

[86] Mass. Gen. Laws ch. 62C, § 55A(c).

[87] *Macy's East, Inc. v. Commissioner of Revenue*, 441 Mass. 797, 804 (2004) (*quoting South Boston Sav. Bank v. Commissioner of Revenue*, 418 Mass. 695, 698 (1994)(internal citation omitted)). .

unmistakably within the express words of a legislative command."[88]    Rights to the Pension do not fall under any of the nine exemptions provided in Mass. Gen. Laws ch. 62C, § 55A and are therefore subject to attachment by the Tax Liens.

Drake also argues that Mass. Gen. Laws ch. 32, § 19 exempts the Pension from attachment by a tax lien.  That statute provides that a right to a pension, such as the Pension, "and all rights in the funds of [the Pension] shall be exempt from taxation, including income taxes levied under the provisions of chapter sixty-two, and from the operation of any law relating to bankruptcy or insolvency and *shall not be attached or taken upon execution or other process*."[89]    The MDOR notes that Mass. Gen. Laws ch. 62C, § 5A was enacted over forty years after Mass. Gen. Laws ch 32 § 19, and fails to include the Pension or income from the Pension as property exempt from attachment.[90] Furthermore, Mass. Gen. Laws ch. 62C, § 55A was drafted with the explicit intent that it trump any other state exemption statutes as is clear by the words of the statute which state that "notwithstanding any other law, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)."[91] The principle of *leges posteriors, priores contrarias abrogant* holds that later-enacted laws are given precedent over conflicting pre-existing laws.[92]    Accordingly, since Mass. Gen. Laws ch. 62C, § 55A(c) conflicts with and was enacted after ch. 32, § 19 and

---

[88] *State Tax Comm'n v. Blinder*, 336 Mass. 698, 703 (1958).

[89] Mass. Gen. Laws ch. 32, § 19 (emphasis added).

[90]  Mass. Gen. Laws. ch 62C, § 55A.  *See also* Mass. Gen. Laws ch 32, § 19.

[91]  Mass. Gen. Laws ch. 62C, § 55A(c).

[92] *See Watt v. Alaska*, 451 U.S. 259, 285 (1981).

because the former statute explicitly trumps the latter, Mass. Gen. Laws ch. 32, § 19 does
not exempt the Pension from attachment by the Tax Liens.

While Drake had not begun to collect on her right to the Pension at the time that
the MDOR filed the notice of the Tax Liens, a teacher becomes eligible to collect her
retirement benefits when she meets either one of two sets of criteria: (1) age 55 or older
and with ten years of qualified service; or (2) with twenty years of qualified service
regardless of age.[93]  On the Petition Date, Drake was over the age of 55 and had over ten
years of qualified service in the system, so she had a vested right to the Pension.
Therefore, though Drake may not have collected benefits from the Pension as of the
Petition Date, she still had a right to that property.

The MDOR argues that the Tax Liens attach to the value of the Pension as of the
Petition Date *and* any additional post-petition value of the Pension.  The cases it cites
from districts and circuits from around the country are all in agreement.  Unfortunately
for the MDOR, they all agree that a pre-petition tax lien is limited to the value of a
debtor's present equitable interest in future income from an instrument, such as the
Pension or a trust, and does not attach to post-petition property.[94]

Because the Pension benefits are not explicitly exempted from attachment and
Drake had rights to the Pension benefits as of the Petition Date, the Tax Liens attached to
the Pension.  Nonetheless, because property acquired after the Petition Date is not subject

---

[93] Mass. Gen. Laws ch. 32, §§ 5, 10.  *See also*, the Massachusetts Teachers' Retirement Board's publication
*Your MTRS Benefits*: *A Guide for Active Members*, (April 2006) at p. 16.

[94] *See Internal Revenue Service v. Orr* (*In re Orr*), 239 B.R. 130 (S.D. Tex. 1998); *Wessel v. United States*
(*In re Wessel*), 161 B.R. 155 (Bankr. D. S.C. 1993); and *United States v. Rogers*, 558 F. Supp. 2d 774 (N.D.
Ohio 2008).

to attachment by the pre-petition Tax Liens, the Tax Liens attach to the Pension only to the extent of its value on the Petition Date.

F.  *The Discharge Injunction*

Section 524(a)(2) of the Bankruptcy Code "operates as an injunction against . . . an act[] to collect, recover or offset any such debt as a personal liability of the debtor."[95] The analysis for determining whether a creditor has violated the discharge injunction must begin by first identifying the act that is alleged to have occurred.  "In assessing violations of . . . . the discharge injunction, the core issue is whether the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly."[96]  In determining whether a violation of the discharge injunction has occurred "the line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts."[97]

In the current proceeding, Drake's *in personam* liability for the taxes were discharged but the MDOR's *in rem* right to proceed against the collateral attached by the Tax Liens survived.  Because Gregory did not receive a bankruptcy discharge, he retained his *in personam* liability for the debt and the MDOR also had an *in rem* right to proceed against property attached by the Tax Liens.

The particular record facts material to my assessment of objective coercion are: (i) Breton's statement that it was the MDOR's position that Drake's liability on the Tax Liens had not expired; (ii) Breton asking Burke for information and documents from Drake regarding her liability on the Tax Liens; (iii) the letter addressed solely to Gregory

---

[95] 11 U.S.C. § 524(a)(2).

[96] *Pratt v. General Motors Acceptance Corporation* (*In re Pratt*), 462 F.3d 14, 19 (1st Cir. 2006).

[97] *Id.*

Drake denying the Hardship Application and indicating that "collection activity on your account will continue"; (iv) Breton informing Burke that in order to consider Gregory's Hardship Application he needed to file a more complete set of documents which included some documents pertaining to Drake's financials jointly with Gregory and solely, including: (a) financial statements, (b) bank account statements, (c) a statement of Drake's financial condition, (d) copies of Drake's pay stubs, and (e) a copy of Drake's annuity savings account statement; (v) the Re-Filing on October 8, 2009; and (vi) Breton's deposition testimony that after the Drakes breached the Payment Agreement, the MDOR tried to collect from Drake like she was "any other taxpayer."

I find that the material facts fail to show that the MDOR improperly coerced Drake to pay it. The MDOR's only activities that could be considered "active" were document requests made to Drake's attorney that were necessary for it to consider Gregory's Hardship Application. Accordingly, I find that the MDOR did not violate the discharge injunction.

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order granting in part and denying in part both motions for summary judgment consistent with my above findings.

_____

_____
William C. Hillman
United States Bankruptcy Judge

Dated: July 19, 2010